UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
ARTHUR D'AMARIO, III,            :
                                 :
        Petitioner,              :   Civ. No. 13-4314 (RBK)
                                 :
    v.                           :   **OPINION**
                                 :
J.T. SHARTLE,                    :
                                 :
        Respondent.              :
_____:

**ROBERT B. KUGLER, U.S.D.J.**

## I.   INTRODUCTION

Petitioner is a federal prisoner currently incarcerated at F.C.I. Fairton in Fairton, New Jersey. He is proceeding *pro se* with an amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Among the issues petitioner raises, he claims that twenty-seven days of jail time credits have not been properly included in the computation of his federal sentence. For the following reasons, the habeas petition will be denied.

## II.   BACKGROUND

On June 20, 2012, petitioner was released from federal custody after serving an eighty-four month prison sentence. Petitioner then began a period of three years of supervised release. From March 2, 2013 until March 28, 2013[1], petitioner was detained by Canadian authorities in Canada for immigration purposes. On March 5, 2013, a warrant was issued in this Court for petitioner's arrest as petitioner violated his supervised release by not notifying his probation officer within seventy-two hours of any change in his residence. On March 28, 2013, petitioner

---

[1] The Court notes that petitioner states in his filings that he was detained by Canadian authorities on March 1, 2013, not March 2, 2013.

was deported by Canada back to the United States and then arrested by the United States Marshals Service in Buffalo, New York.

On May 23, 2013, petitioner was sentenced to twenty-four months imprisonment in this Court for violating the terms of his supervised release. Petitioner received jail time credits from March 28, 2013 (the date he was arrested by United States Marshals) until May 22, 2013 (the date he was sentenced for violating his supervised release). His projected scheduled release date is December 23, 2014.

In July, 2013, petitioner filed this habeas action. In September, 2013, before the respondent was ordered to answer, petitioner filed an amended habeas petition. Petitioner raises several claims in this amended habeas petition. First, petitioner claims that he should be awarded twenty-seven additional days of jail time credits while he was detained in Canada until he was arrested by the United States Marshals on March 28, 2013 ("Claim I"). Second, petitioner requests a transfer to F.C.I. Victorville, in Victorville, California, or a medium-level prison in Arizona where petitioner's mother lives as he has no ties to New Jersey where he is currently incarcerated ("Claim II"). Third, petitioner states that he was wrongly denied twelve to thirteen months jail time credits on a prior federal criminal sentence ("Claim III"). Finally, petitioner states that his health is suffering and he complains about the living conditions at F.C.I. Fairton ("Claim IV").

Respondent answered the amended habeas petition on October 31, 2013. Respondent argues that Claim I is unexhausted and/or can be denied on the merits. Respondent also argues that petitioner has failed to exhaust Claim II. Furthermore, respondent claims that this Court lacks jurisdiction to consider petitioner's placement issue raised in Claim II and conditions of

confinement claim raised in Claim IV.  Finally, respondent argues that petitioner is estopped from raising Claim III as that issue was fully litigated in a previous case.

After respondent filed an answer, petitioner filed a reply, a motion for immediate release, a motion for a preliminary injunction as well as supporting declarations.

### III.   DISCUSSION

A. Claim I

In Claim I, petitioner argues that he has not been awarded twenty-seven additional days of jail time credits while he was in Canadian custody from March 1, 2013 to March 28, 2013.  This type of claim is properly raised in a § 2241 habeas petition.  *See Cabada v. Zickefoose*, 432 F. App'x 161, 163 (3d Cir. 2011) (per curiam) (noting that District Court had subject matter jurisdiction under § 2241 on petitioner's claim that Bureau of Prisons miscalculated jail time credits).

i.   *Exhaustion*

"In general, inmates must exhaust administrative remedies before proceeding on a habeas petition brought under § 2241."  *Pinet v. Holt*, 316 F. App'x 169, 171 (3d Cir. 2009) (per curiam) (citing *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996)).  The Bureau of Prisons ("BOP") Administrative Remedy Program is available to federal inmates and comprises several steps before a prisoner exhausts his administrative remedies.  An inmate must first attempt to resolve the issue informally with institutional staff.  *See* 28 C.F.R. § 542.13(a).  If informal resolution efforts fail to get the result a prisoner is looking for, he can submit a complaint to the warden within twenty days on the date upon which the basis for the request occurred.  *See* 28 C.F.R. § 542.14.  An inmate who is dissatisfied with the warden's response may submit a B-10 appeal with the Regional Director within twenty days of the warden's signed

response.  *See* 28 C.F.R. § 542.15(a).  The inmate may then appeal to the BOP's General Counsel via a B-11 appeal within thirty days of the Regional Director's signed response.  *See id.*  Appeal to the General Counsel is the final administrative appeal.  *See id.*

Respondent argues that petitioner has failed to exhaust Claim I because he only filed an appeal to the Warden, but not to the Regional Director or the General Counsel.  On March 10, 2014, petitioner submitted a declaration and accompanying documentation indicating that he did file appeals to the Regional Director and the General Counsel.  (*See* Dkt. No. 13.)  Both of those appeals were dismissed as untimely on November 8, 2013 and January 16, 2014 respectively. [2] (*See id.* at p. 2-3.)

"In order to exhaust, petitioners must satisfy the procedural requirements of the administrative remedy process."  *Valles v. Scism*, 435 F. App'x 97, 98 (3d Cir. 2011) (per curiam) (citing *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 761-62 (3d Cir. 1996)).  Thus, where a petitioner's administrative appeal is denied as untimely, the petitioner fails to comply with the procedural requirements of the administrative remedy process and his claims are unexhausted.  *See id.*; *see also Beckford v. Martinez*, 408 F. App'x 518, 520 (3d Cir. 2010) (per curiam) (finding that where a petitioner's administrative appeals were rejected as untimely that the petitioner failed to exhaust his administrative remedies).

In this case, as noted above, petitioner's intermediate and highest level administrative appeals were rejected as untimely.  Nevertheless, a petitioner who shows cause and prejudice can overcome this lack of exhaustion.  *See Beckford*, 408 F. App'x at 520 ("Absent a showing of cause of prejudice for procedural default [of administrative remedies], review of the merits of Beckford's habeas petition is barred.") (citing *Moscato*, 98 F.3d at 762).  Petitioner argues that he filed his B-10 appeal to the Regional Director within the required twenty days.  He claims he

---

[2] Accordingly, petitioner's purported exhaustion took place after respondent filed an answer.

filed the appeal within twenty days of the Warden's October 1, 2013 decision as he included it with Federal Tort Claims Act ("FTCA") notices that were submitted to the Northeast Regional Office on October 8, 2013. He asserts that the Northeast Regional Office threw out that initial B-10 appeal.

Petitioner attached copies of his FTCA notices, but has not has not submitted a copy of his purportedly October 8, 2010 timely B-10 administrative appeal to the Regional Director. Accordingly, petitioner supplies no supporting documentation to support a "cause" argument excusing his lack of exhaustion. Therefore, the Court finds that this Claim is unexhausted.

    ii.    *Merits*

Even assuming *arguendo* that petitioner had properly exhausted his administrative appeals with respect to Claim I (or that his lack of exhaustion can be excused), Claim I can also be denied on the merits. As stated above, petitioner argues that he is entitled to twenty-seven additional days of jail time credit for the time he was in custody in Canada.

Determining a term of imprisonment comprises two steps: (1) "a sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to . . . the official detention facility at which the sentence is to be served[;]" and (2) a defendant receives credit for time spent in custody "prior to the date the sentence commences . . . that has not been credited against another sentence." *See* 18 U.S.C. § 3585(a) & (b). "In other words, a federal prisoner can receive credit for certain time spent in official detention before his sentence begins, as long as that time has not been credited against any other sentence against any other sentence. Section 3585(b) makes clear that prior custody credit cannot be double counted." *See Williams v. Zickefoose*, 504 F. App'x 105, 107 (3d Cir. 2012) (per curiam) (citing *United States v. Wilson*, 503 U.S. 329, 337 (1992)).

BOP Program Statement 5880.28 states that "official detention does not include time spent in the custody of the U.S. Immigration and Naturalization Service (INS) under the provisions of 8 U.S.C. § 1252 pending a final determination of deportability. An inmate being held by INS pending a civil deportation determination is not being held in 'official detention' pending criminal charges." (*See* Dkt. No. 7-6 at p. 32.) "Time spent solely in civil or administrative immigration pending deportation cannot be credited against a federal sentence as § 2585 only allows credit for time spent in 'official detention' on criminal charges." *Paz-Salvador v. Holt*, No. 10-2668, 2011 WL 3876268, at *3 (M.D. Pa. Aug. 31, 2011) (citing *Galan-Paredes v. Hogsten*, No. 06-1790, 2007 WL 30329, at *2 (M.D. Pa. Jan. 3, 2007)); *see also United States v. Lopez*, 650 F.3d 952, 966 (3d Cir. 2011) (finding no clear error that defendant was not in "official detention" because there was no record to indicate that a definitive decision regarding criminal prosecution had been made); *Stojkowski v. Fisher*, No. 10-2390, 2011 WL 1831680, at *5 (D. Minn. Apr. 18, 2011) (collecting cases and stating that courts "have repeatedly concluded that time spent in the custody of immigration officials awaiting a deportation determination is not "official detention" within the meaning of Section 3585(b)."), *report and recommendation adopted by*, 2011 WL 1827469 (D. Minn. May 12, 2011). Nevertheless, courts have also noted that immigration detainees who are" being held in immigration custody in anticipation of a federal indictment for illegal re-entry are entitled to credit for their time held awaiting indictment." *See Paz-Salvador*, 2011 WL 3876268, at *3 (citing *Reyes-Ortiz v. Schultz*, No. 08-6386, 2009 WL 4510131 (D.N.J. Dec. 1, 2009); *Galan-Paredes*, 2007 WL 30329, at *2-3).

In this case, petitioner was held by Canadian officials for immigration purposes only in March, 2013. Indeed, Canadian officials have stated as such. (*See* Dkt. No. 7-6 at p. 10 (letter

from Canadian Ministry of Community Safety and Correctional Services to BOP stating that petitioner was incarcerated "for immigration purposes [o]nly").)  The Court notes that petitioner was in the custody of foreign immigration officials on foreign soil rather than by United States immigration officials in the United States on the dates at issue.  However, the Court finds that this fact does not warrant a finding that petitioner was under "official detention" to warrant adding an additional twenty-seven days of jail time credits to petitioner's sentence.

In *Stojkowski,* the Court was presented with a similar situation with the one presented by this case; namely whether to give a petitioner jail time credits for the period in which he was in the custody of Canadian immigration officials to determine his immigration status and to institute potential removal proceedings.  The *Stojkowski* Court recited the relevant case law that time spent in United States immigration custody awaiting deportation is not "official detention" within the meaning of Section 3585(b).  *See* 2011 WL 1831680, at *5.  Nevertheless, the United States District Court for the District of Minnesota stated that it had "no reason to believe that it should treat foreign immigration custody any differently."  *Id.*  The Court found persuasive the case that found United States immigration custody was not "official detention."  *See id.*

This Court finds the reasoning of the *Stojkowski* court persuasive.  Petitioner was only held by Canadian officials for immigration purposes.  As with the District of Minnesota in *Stojkowski*, this Court finds no reason to believe that it should treat petitioner's Canadian immigration custody for purposes of deportation differently than if he was in custody by United States immigration officials for deportation.  *See Stojkowski*, 2011 WL 1831680, at * 5 n. 8 (noting that Canada also defines immigration and deportation as a civil rather than a criminal proceeding) (citations omitted)   Accordingly, the fact that petitioner was in Canadian as opposed to United States immigration custody for the twenty-seven days in March, 2013, does not

warrant a finding that petitioner was under "official detention" during this period. Therefore, Claim I is also without merit.

    B. <u>Claim II</u>

In Claim II, petitioner requests a transfer to F.C.I. Victorville II in California, or to a medium-level security prison in Arizona where his mother lives. Petitioner claims that the BOP is not following its own program statement by detaining petitioner more than 500 miles beyond his release destination. (*See* Dkt. No. 9 at p. 3.) To invoke habeas jurisdiction over this Claim, petitioner must show that he is "in custody," and that he challenges the legality of his custody on the ground that it is "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2241(c)(3). "Section 2241 is the only statute that confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence." *Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001).

In *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 243 (3d Cir. 2005), the United States Court of Appeals for the Third Circuit differentiated a habeas petitioner bringing a § 2241 habeas petition for failure to transfer him to a community corrections center ("CCC") from a garden variety prison transfer; specifically, the Court explained as follows:

> Carrying out a sentence through detention in a CCC is very different from carrying out a sentence in an ordinary penal institution. More specifically, in finding that Woodall's action was more properly brought under § 2241, we determine that placement in a CCC represents more than a simple transfer. Woodall's petition crosses the line between a challenge to, for example, a garden variety prison transfer.
>
> The criteria for determining CCC placement are instrumental in determining how a sentence will be "executed." CCCs and similar facilities, unlike other forms of incarceration, are part of the phase of the corrections process focused on reintegrating an inmate into society. The relevant statute specifically provides that a prisoner should be placed in a CCC or similar institution at the end of a

> prison sentence to "afford the prisoner a reasonable opportunity to adjust to and prepare for . . . re-entry into the community." 18 U.S.C. § 3624. CCCs thus satisfy different goals from other types of confinement. We have noted the relatively lenient policies of CCCs as compared to more traditional correctional facilities. CCC pre-release programs often include an employment component under which a prisoner may leave on a daily basis to work in the community. Inmates may be eligible for weekend passes, overnight passes, or furloughs.

*See Woodall*, 432 F.3d at 243 (citations omitted).

Unlike the petitioner in *Woodall*, petitioner does not challenge a decision not to transfer him to a CCC. Instead, petitioner challenges the BOP's decision not to transfer him to a prison in California or Arizona. Such a challenge is not properly before this Court as a § 2241 claim. *Accord Ganim v. Fed. Bureau of Prisons*, 235 F. App'x 882, 883 (3d Cir. 2007) (per curiam)("Ganim, who challenges a decision not to transfer him from federal prison in New Jersey to a similar facility in New York, does not cross the line that Woodall crossed); *Dazza v. Hollingsworth*, No. 12-7568, 2013 WL 6187422, at *2 (D.N.J. Nov. 26, 2013) (finding court lacked jurisdiction over § 2241 petition where federal prisoner challenged failure to transfer him from one federal prison to another); *Gonzales v. Zickefoose*, No. 12-7160, 2012 WL 6652826, at *2-3 (D.N.J. Dec. 19, 2012) (same). Accordingly, this Court will dismiss this claim without prejudice due to a lack of jurisdiction.[3]

C. Claim III

In Claim III, petitioner argues that he was properly denied twelve to thirteen months jail time credit in a criminal case arising in the United States District Court for the District of Rhode Island. Respondent argues that petitioner is estopped from bringing this claim in this case as petitioner fully litigated this issue in another habeas case in this Court in Civ. No. 00-2400.

---

[3] The dismissal of this habeas claim without prejudice should not be construed as a comment on the merits of such a claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

i.      *Abuse of the Writ*

Section 2244(a) of Title 28 of the United States Code states that, "[n]o circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255." "The Supreme Court has held that the abuse of writ doctrine precludes inmates from relitigating the same issues in subsequent petitions *or* from raising new issues that court have been raised in earlier petition."[4]  *Boardley v. Grondolsky*, 343 F. App'x 837, 839-40 (3d Cir. 2009) (per curiam) (citing *McCleskey v. Zant*, 499 U.S. 467, 489 (1991)). The Third Circuit has held that "that the abuse-of-the-writ doctrine applies to section 2241 petition; thus, a petitioner may not raise new claims that could have been resolved in a previous action."  *Id.* at 839 (citing *Queen v. Miner*, 530 F.3d 253, 255 (3d Cir. 2008) (per curiam); 28 U.S.C. § 2444(a).

> Under the abuse of the writ doctrine, a federal court "may not reach the merits of: (a) successive claims that raise grounds identical to grounds heard and decided on the merits in a previous petition; new claims, not previously raised, which constitute an abuse of the writ," unless a habeas petition shows cause and prejudice or a fundamental miscarriage of justice.

*Hickman v. Zickefoose*, No. 11-5499, 2012 WL 1044508, at *2 n.1 (D.N.J. Mar. 28, 2012) (quoting *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992)); *see also Alden v. Warden, U.S. Penitentiary Allenwood*, 444 F. App'x 514, 516 (3d Cir. 2011) (per curiam) ("A petitioner may

---

[4] In arguing that this Court should not consider Claim III on the merits, respondent relies on res judicata and collateral estoppel.  However, "'[t]he Supreme Court has been very clear' that with respect to subsequent habeas . . . petitions, "abuse of the writ is a substitute for res judicata, and that res judicata, strictly speaking, does not attach to the denial of a first habeas petition.'" *Muniz v. United States*, 236 F.3d 122, 126 (2d Cir. 2001) (quoting *Calderon v. United States Dist. Court*, 163 F.3d 530, 537 (9th Cir. 1998) (en banc) (citing *McCleskey*, 499 U.S. at 479-88)) (remaining citations omitted).

justify his prior omission by showing cause and prejudice for his failure to earlier raise a claim. And [i]n a case in which a successive petition includes a claim for relief already fully considered and rejected . . . the petitioner [must] show that 'the ends of justice' would be served by the court entertaining the petition.") (internal quotation marks and citations omitted). "A fundamental miscarriage of justice may arise where 'a petitioner supplements a constitutional claim with a colorable showing of factual innocence.'" *Boardley*, 343 F. App'x at 840 (quoting *McCleskey*, 499 U.S. at 495).

In petitioner's prior habeas case, he argued that the BOP refused to give him the proper jail time credit in his federal criminal conviction in Rhode Island. *See D'Amario v. Bailey*, No. 00-2400, 2010 WL 1931132, at *1 (D.N.J. May 12, 2010) (discussing petitioner's prior § 2241 action). The Court denied the petition on the merits after determining that the BOP correctly interpreted the relevant statute. *See id.* Petitioner does not show that he could not have raised Claim III in that prior habeas petition in Civ. No. 00-2400. As this Court has raised the abuse of the writ issue *sua sponte*,[5] the Court would typically give petitioner leave to attempt to establish cause and prejudice or that a fundamental miscarriage of justice would occur by failing to entertain Claim III. *See Alden*, 444 F. App'x at 516 ("[T]he District Court may have erred in dismissing the petition sua sponte for abuse of the writ without giving Alden prior notice and an opportunity to respond."). However, in this case, the Court will not give petitioner such leave as Claim III can also be denied on the merits.

ii.   *Merits*

Petitioner states that this Court can consider Claim III because he is serving a consecutive sentence to the sentence in which he was erroneously not given the proper amount of jail time

---

[5] As explained in *supra* note 3, respondent did not challenge Claim III based on an abuse of the writ theory, but instead on a res judicata/collateral estoppel theory. Thus, petitioner was presumably not on notice that this claim could be dismissed under an abuse of the writ theory.

11

credits.  This Court previously rejected such an argument for habeas relief in denying petitioner's Rule 60(b) motion in his prior § 2241 habeas petition.  Indeed, the Court stated as follows:

> Petitioner points out that under *Garlotte v. Fordice*, 515 U.S. 39, 45-46, 115 S. Ct. 1948, 132 L. Ed. 2d 36 (1995), a prisoner held on consecutive sentences may challenge any of the aggregate sentences because even if one discrete part has been served, invalidation of a part may reduce the duration of the whole.  This is true, and the service of any such sentence therefore provides both Article III standing and statutory eligibility for habeas relief during the period of incarceration for such consecutive sentences.  But Petitioner satisfied his own such consecutive sentences on February 10, 2006.  Petitioner is currently confined in a federal facility, but it is on the basis of a sentence that is wholly independent from the one he seeks to challenge.  *See Maleng*, 490 U.S. at 491-92 (explaining independence of sentences, even where the sentence has been enhanced because of prior convictions).  Petitioner was "in custody" when the original § 2241 petition was filed, and during his subsequent consecutive sentences.  But he is no longer "in custody" for purposes of a new habeas petition, awarding him jail credit on his previous federal sentence would not affect the duration of Petitioner's current confinement, and therefore the Court does not have statutory jurisdiction to issue such a ruling.  *See Sweet v. McNeil*, 345 F. App'x 480, 482 (11th Cir. 2009); *De Long v. Hennessey*, 912 F.3d 1144, 1146 (9th Cir. 1990).

*D'Amario*, 2010 WL 1931132, at *2.  For similar reasons as expressed by the Court in 2010, this Court also lacks jurisdiction to consider Claim III as it challenges the amount of jail time credits he was awarded on a non-consecutive sentence for which petitioner is no longer serving.  Therefore, for the foregoing reasons, Claim III will be denied.

   D.  <u>Claim IV</u>

In Claim IV, petitioner states that he is suffering health effects from being incarcerated in an overcrowded and congested prison.  A claim such as this is a challenge to petitioner's condition of confinement rather than a challenge to the validity of his conviction or length of his sentence.  Such a challenge is appropriately brought in an action under *Bivens* as opposed to a

habeas claim under § 2241. *See Woodruff v. Williamson*, 362 F. App'x 263, 266 (3d Cir. 2010) (per curiam); *see also Leamer v. Fauver*, 288 F.3d 532, 542 (3d Cir. 2002) ("[W]henever the challenge ultimately attacks the 'core of habeas' – the validity of the continued conviction or the fact or length of the sentence – a challenge, however, denominated and regardless of the relief sought, must be brought by way of a habeas corpus petition. Conversely, when the challenge is to a condition of confinement, such that a finding in plaintiff's failure would not alter his sentence or undo his conviction, [a civil rights action] is appropriate."). In this case, Claim IV is a conditions of confinement claim not properly raised as a habeas claim. Therefore, Claim IV will be dismissed without prejudice due to a lack of jurisdiction.

    E.  Motions for Immediate Release and Preliminary Injunction

After this matter was fully briefed, petitioner filed a motion for immediate release and a separate motion for a preliminary injunction. As all of petitioner's habeas claims are being denied, the Court will also deny these motions.

### IV. CONCLUSION

For the foregoing reasons, the habeas petition will be denied, however, Claims II and IV will be denied without prejudice due to a lack of habeas jurisdiction. An appropriate order will be entered.


DATED: March 13, 2014

                                          s/Robert B. Kugler
                                          ROBERT B. KUGLER
                                          United States District Judge